UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.                                                                     Case No. 14-C-663

WISCONSIN PLASTICS, INC.,

    Defendant.

## DECISION AND ORDER

The EEOC brought this action against Wisconsin Plastics, Inc. ("WPI") alleging discrimination in the workplace based on race and / or national origin after WPI laid off a number of Hmong and Hispanic employees. The individual aggrieved individuals were granted permission to intervene. WPI moved for summary judgment, arguing that neither the EEOC nor the intervening Plaintiffs has any evidence of prohibited discrimination. For the reasons given below, the motion will be denied.

Between October 2012 and January 2013, WPI laid off 38 of its 114 production operators. Of the 114 production operators working for WPI as of September 2012, some 85, or about 75%, were of Asian descent and 6 (5%) were Hispanic. Twenty-eight of the fired employees, or about 74%, were of Asian descent, and 3 of them (8%) were Hispanic.

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

"It shall be an unlawful employment practice for an employer—

(1) ... to discharge any individual, or otherwise to discriminate against any individual

> with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."

42 U.S.C. § 2000e–2(a).

More than forty years ago, the Supreme Court established a framework for assessing discrimination claims. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The EEOC proceeds under what is known as the indirect method, which initially requires the showing of a prima facie case of discrimination. To establish a prima facie case of illegal discrimination, the plaintiff bears the "burden of presenting evidence that raises an inference of discrimination." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510 (2002). This means the employee must show that he is a member of a protected class, that he met the employer's reasonable expectations, that he was fired, and that the employer treated others outside the protected class more favorably. *Id.* If the employee can establish these factors, the burden shifts to the employer to articulate a legitimate reason for the termination. If the employer comes forward with a legitimate, non-discriminatory reason, then the presumption of discrimination disappears. At that point, "the plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,'" *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507-08 (1993).

For purposes of summary judgment, the Defendant has conceded the prima facie factors. It concedes that the employees were members of a protected class (Hispanic or Hmong) and that they were terminated. It also concedes that they were living up to the employer's expectations. Specifically, WPI concedes that the job of production operator may be adequately performed by people who do not speak or read the English language.

2

WPI jumps right past the prima facie case to its stated, legitimate reasons for selecting these individuals for termination, which is their inability to speak English, which it concedes was the "but for" cause of their termination. Despite conceding that English was not required to perform the job, WPI viewed the inability to speak English as a negative factor and used that factor to dictate the termination decision.

The intervening Plaintiffs in particular appear to believe that the employer's preference for English-speaking employees is so inherently suspicious that it cannot constitute a legitimate, non-discriminatory reason. In some cases the lack of English language proficiency might not be a legitimate, non-discriminatory reason for termination, but that is essentially a question of fact that will turn on the particular circumstances of every case. For example, although English proficiency may not be *required* for performance of the specific job at issue, in some cases an employer might reasonably conclude that the employees' inability to communicate will restrict their ability to progress into positions of greater authority within the company. All things being equal, an employee who speaks fluent English is more valuable than one who does not because that employee has the potential to provide added value to the corporation in other capacities. Similarly, the employer might conclude that employees who can communicate with everyone else in the company will have a higher morale and become more productive. Thus, although the specific job at issue might not have required English proficiency, an employer's preference for such a proficiency could be a legitimate consideration.

But that does not mean a court can conclude, as a matter of law, that the ability to speak English is necessarily a legitimate, nondiscriminatory reason. Here, the Defendant has cited English speaking as the reason, but has not provided a substantial justification for that reason—nor is that

3

surprising, given its concession that English was not required to perform the job adequately. Some courts have concluded that "[a] foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions." *Carino v. Univ. of Oklahoma Bd. of Regents,* 750 F.2d 815, 819 (10th Cir. 1984), while others note that the question is a matter of fact. *E.E.O.C. v. Premier Operator Servs., Inc.*, 75 F. Supp. 2d 550, 558-59 (N.D. Tex. 1999) ("the evidence in the record does not resolve the genuine issue of material fact of whether Defendants' asserted 'business' reasons for establishing the English-only policy are legitimate, nondiscriminatory reasons for terminating the class members.") Thus, I conclude the Defendant has not established, as a matter of law, that its policy of favoring English-speakers is a legitimate, non-discriminatory reason.[1]

In addition, there are factual issues surrounding the issue of pretext. As is often the case, the question turns on whether the Plaintiff has evidence that, if believed by the factfinder, would mean that WPI's stated reason for the termination was a pretext, i.e., a lie. On this point, the Defendant's argument is quite simple. It argues that despite extensive discovery, and despite the Defendant's concession to *all* of the Plaintiff's proposed findings of fact, the Plaintiffs have no evidence that race or national origin played a role in the termination. The only thing the Plaintiffs can show is that it discriminated against the fired employees on the basis that they were not fluent in English, which is not a class protected by federal statute. Because an inability to speak English is not the legal analog to race or national origin, WPI argues that the Plaintiff's case must be

---

[1]The parties do not assert that the English language requirement has a disparate impact on Hispanic or Hmong employees. Under such a theory, a plaintiff can establish a prima facie case of discrimination by demonstrating that the specific practice complained of has a disproportionately adverse impact upon members of a protected group. *Griggs v. Duke Power Co.,* 401 U.S. 424 (1971).

4

dismissed.

The Plaintiffs argue that matters are more nuanced than that. It is true that language ability *per se* is not the legal equivalent to a protected class like race or national origin, but language can sometimes serve as a proxy, or stalking horse, for discrimination against a protected class. For example, employees who are foreign-born often lack English fluency, and so there is a strong correlation between people who do not speak English, a non-protected class, and those of a given national origin, which *is* a protected class. Here, WPI has conceded that the ability to speak English does not materially impact the employees' ability to do their job as production operators. After all, presumably it knew about their English capabilities when it hired so many non-native speakers to be production operators in the first place. And so if English speaking is irrelevant to job performance, a juror might reasonably question why the employer seized on that factor as the reason given for the employees' termination.

On top of the unusual fact that the employer's stated reason is conceded to be irrelevant to the employees' job performance, the Plaintiffs point to the fact that during the same period the employer was *hiring* people—88 people, of whom 62 were Caucasian. The net effect of all the hirings and firings was to flip the ethnic profile of the workplace so that Asians, who had been a significant majority of the assembly workforce, now constituted only a plurality, at 49%, while Caucasian representation rose from 14% to 43%. (Black assemblers also rose by similar percentages.) A reasonable jury, faced with this evidence, might draw the conclusion that the company was reconstituting itself by race or national origin—particularly if that jury heard that language ability (WPI's stated reason) did not affect job performance. (The same jury might also consider whether the two dozen or so newly-hired Asian employees did speak English, in contrast

5

to those who were terminated.)

In addition, the EEOC notes that WPI has provided different reasons for the terminations over time. Early on, it suggested that employee performance was the problem because the employees had flunked their performance improvement plans. But some employees did not even know these improvement plans existed, and in fact some of them received the plans on their last day of work. Later, WPI told the EEOC that the firings were done for economic reasons, but then WPI turned around and hired substantial numbers of new assemblers during the same period, and its best sales years were the stretch from 2010 to 2013. Finally, many WPI witnesses denied that language was a factor in the terminations, but now, during litigation, WPI seizes on language as the reason for all of the terminations.

The Defendants' motion appears premised on the fact that despite exhaustive discovery the Plaintiffs have not identified any memo, document or oral testimony that suggests the reason for the firings was discriminatory on the basis of race or national origin. Although that is true, that is also true in *any* case in which the plaintiffs proceed under the indirect method. Seldom is there a "gotcha" moment (at least in cases that get this far) where an employer admits that race (for example) was the true reason for the termination. Human resources staff are savvy enough to avoid putting things like that in writing, and so the mere fact that there isn't direct (or even circumstantial) evidence of discrimination is merely to say that this is a case, like most, that relies on the indirect method established in *McDonnell Douglass*. At the pretext stage, a plaintiff need only "produce evidence from which a rational factfinder could infer that [the employer] lied about its proffered reasons ..." *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 682 (7th Cir.1996). "A plaintiff may establish pretext by proving one of the following: '(1) the proffered reasons are factually

6

baseless; (2) the proffered reasons were not the actual motivation for the [adverse action]; or (3) the proffered reasons were insufficient to motivate the [adverse action].'" *Wolf v. Buss, Inc.,* 77 F.3d 914, 919 (7th Cir. 1996).

Here, a factfinder would consider that the employer's stated reason for termination had little or nothing to do with the employee's job performance. That, on its own, could easily raise suspicions, particularly if the company was doing well economically. The same factfinder would also hear how the employer's stated reasons shifted over time, which suggests that the reason now identified might not be the true reason. On top of that, if the employer dramatically switched the racial or national origin composite of its workforce during the same period, a juror could reasonably conclude that race and national origin, and not language ability, were the true reason for the layoffs. In short, there is more than enough here for the Plaintiffs to defeat a motion for summary judgment.

At points the EEOC seems to be arguing for a *per se* rule, that is, a holding that illegal discrimination exists *any* time an employer (1) cites language as the reason for termination and (2) concedes that language is not a material requirement of the job. (ECF No. 64 at 14.) In a sur-reply brief it backs off such a view (to the extent it was argued in the first place). In any event, certainly no *per se* rule exists in terms of a finding on the ultimate question of liability—if that were true, the Plaintiffs would have moved for summary judgment themselves. But in terms of defeating a motion for summary judgment, it is difficult to imagine a defendant winning summary judgment when it has conceded that its stated reason for firing a number of employees was not a factor in the employees' job performance, particularly when the stated reason (language) has a close relationship with a protected class status.

Finally, I address the intervening Plaintiffs' approach, which proceeds under the direct

7

Case 1:14-cv-00663-WCG   Filed 05/05/16   Page 7 of 9   Document 94

method instead of the indirect method taken by the EEOC. The intervening Plaintiffs argue that the Defendant's admissions are tantamount to direct evidence of discrimination, since language is closely linked to national origin. They also argue that the circumstances surrounding the layoffs create a "convincing mosaic" of circumstantial evidence. Having concluded that the Plaintiffs may proceed under the indirect method, it might be largely academic whether the approach is described as "indirect" or "circumstantial," and I see "no reason to agonize over which label should be used to analyze" the question. *Strauch v. Am. Coll. of Surgeons,* 301 F. Supp. 2d 839, 843-44 (N.D. Ill. 2004). Even so, it is noteworthy that a plaintiff proceeding under the direct approach has a somewhat harder task. Specifically, it is not enough to show that the employer is lying about the actual reason for the termination; the plaintiff's evidence must establish that the real reason was illegal discrimination. "[A]ssuming Van Antwerp marshaled enough circumstantial evidence to show pretext, his claim of discrimination under the direct method would still fail. Evidence offered under the direct method 'must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus.'" *Van Antwerp v. City of Peoria, Ill.,* 627 F.3d 295, 298-99 (7th Cir. 2010) (quoting *Venturelli v. ARC Cmty. Servs., Inc.,* 350 F.3d 592, 601 (7th Cir. 2003)).

      Here, the evidence the Plaintiffs point to does not specifically suggest that race or national origin was a reason for the terminations. In fact, the Plaintiffs cite a written policy, dating back several years, under which the company specifically determined to make English fluency a priority. If anything, much of the evidence the Plaintiffs cite tends to strengthen the Defendant's case that language, and not race or national origin, was the true reason. The fact that the Defendant's explanation has changed over time merely undermines the employer's stated reason for the

8

terminations—it does not in itself suggest that the true reason was illegal discrimination. "Even if Van Antwerp had shown that the Department lied . . . he has pointed to no evidence that would raise an inference that the Department failed to transfer him because of his age." *Id*. And the fact that the employer hired both Caucasian and Black employees during the same time period again suggests that the employer was preferring employees who spoke English, not that it was discriminating against Asians or Hispanics. In short, the Intervening Plaintiffs' arguments are all directed at showing that the Defendant is lying (pretext), not that the true reason for the termination was discrimination. Because "circumstantial evidence . . . must point directly to a discriminatory reason for the employer's action," I would have granted the Defendant's motion had the Plaintiffs limited themselves to a case based on direct evidence. *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

For the reasons given above, the motion for summary judgment is **DENIED**. The motion to file a sur-reply is **GRANTED**. The motion to seal is **GRANTED**, as the document contains sensitive and proprietary financial information. The Clerk is directed to place this matter on the Court's calendar for a telephone Rule 16 conference to address further scheduling.

**SO ORDERED** this 5th day of May, 2016.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court